**[Cite as *In re O.T.*, 2018-Ohio-1615.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re O.T., J.H., L.T.

Court of Appeals No. L-17-1195

Trial Court No. 17261138

**DECISION AND JUDGMENT**

Decided: April 25, 2018

* * * * *

Laurel A. Kendall, for appellant.

Bradley W. King, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common

Pleas, Juvenile Division, which awarded permanent custody of the minor children, O.T.,

J.H., and L.T., to appellee, Lucas County Children Services ("LCCS"), thereby

terminating the parental rights of mother-appellant, Q.H.[1]  For the reasons that follow, we affirm.

## I.  Facts and Procedural Background

{¶ 2} LCCS became involved with this family in 2011 when mother was arrested for complicity to aggravated trafficking in drugs.  Mother was sentenced to prison, and legal custody of mother's three children, D.C., O.T., and J.H., was awarded to maternal aunt, Del.C.  D.C. is mother's oldest child, and is not a subject of these proceedings.  While mother was in prison, she gave birth to A.H.  Legal custody of A.H. was awarded to a maternal friend, M.G.  A.H. is not a subject of these proceedings.  L.T. was born in 2014, after mother was released from prison, and legal custody of her was awarded to S.M., a maternal relative.

{¶ 3} Del.C. and S.M. cared for the children until approximately June 2016. During this time, the testimony revealed that Del.C. and S.M. would often leave the children with mother over the weekend or for extended periods of time, despite the fact that mother's visitation with the children was supposed to be supervised.  In June 2016, Del.C. and S.M. gave the children to the maternal grandmother, C.M.  C.M. cared for the children until September 2016, at which time she determined that she could no longer do so, and left the children with LCCS.  There was also a referral around that time that C.M.

---

[1] The trial court also terminated the parental rights of the fathers of the children:  R.T., the father of O.T. and L.T., and J.C., the father of J.H.  R.T. and J.C. are not parties to this appeal.

2.

was beating the children with an extension cord, and was using the children's money to purchase crack cocaine. LCCS then filed an action for original permanent custody of O.T., J.H., and L.T. At the initial staffing meeting, mother offered herself as a potential placement for the children, but the agency declined, citing mother's extensive history with the agency.

{¶ 4} An adjudicatory hearing was held on May 5, 2017, following which the children were found to be dependent.[2] The matter proceeded immediately to the dispositional hearing. At the dispositional hearing, a security officer at LCCS testified concerning a visit mother had with the children on February 23, 2017. At that visit, mother was slurring her speech as she entered the room, and the security officer noticed that her eyes were moving a lot. The security officer also noticed that mother's balance was off and she was stumbling. The visit was nonetheless allowed to proceed. The security officer recalled that mother's behavior was different during that visit in that she was overly affectionate with the children, and talked to him more than usual. The security officer also testified regarding a recent visit where mother became very verbally

---

[2] Del.C. and S.M. failed to appear for any days of the hearing despite being properly notified and summoned. The attorney for S.M. petitioned the court for S.M. to be dismissed as she was no longer interested in pursuing custody. The trial court granted this motion and dismissed S.M. The attorney for Del.C. requested permission to withdraw as she had no contact with Del.C. and was not informed of her wishes on how to proceed. The trial court treated the request as a waiver of the right to counsel and allowed Del.C.'s attorney to withdraw.

3.

aggressive towards the staff, to the point that the staff felt uncomfortable leaving by themselves that night.

{¶ 5} Rhonda Nicholson, the ongoing caseworker testified next. Nicholson testified that no case plan services were offered to mother in this case. However, case plan services had been offered to mother in a companion case involving her oldest child, D.C. Nicholson explained that those services began in the spring of 2015, and included substance abuse services and parenting. Nicholson testified that mother had not successfully completed a substance abuse program, and had failed to follow through with at least three scheduled appointments to have assessments done at Unison, most recently on October 7, 2016, March 31, 2017, and April 21, 2017. Nicholson also testified that mother had been requested to provide urine screens, but refused. Further, mother had tested positive for oxycodone in March 2016 during the pendency of D.C.'s case. Mother had also not engaged in and successfully completed a parenting program. In addition, mother was ordered to engage in family counseling with D.C., but she was unsuccessfully discharged from counseling because she failed to attend two out of four sessions. However, mother, on her own, reengaged in family counseling through Lutheran Social Services, completing her assessment on May 1, 2017.

{¶ 6} Mother, on the other hand, pointed out that she was successfully discharged from services at Unison on December 28, 2015. As part of that, mother had to submit random drug screens, which were negative for substances except for what mother had been prescribed. Mother also submitted evidence that she completed the substance abuse

4.

education program through the Alvis House in August 2012, an anger management course through the Alvis House in September 2012, a parenting program through Crossroads Family Resource Center in December 2012, and an adult alcohol and drug treatment program through Unison in January 2015. Mother has had no other convictions, other than an OVI, which occurred on her wedding night in March 2015. Mother successfully completed her probation on the OVI through the Oregon Municipal Court. Mother testified that she was a good parent, that she was bonded with her children, and that she just wanted an opportunity to get her children back.

{¶ 7} Mother also testified regarding her experience with D.C., who had recently been returned to mother's care. D.C. was 16 years old at the time, and the testimony revealed that she suffered from bipolar disorder and substance abuse. In March 2016, mother had an altercation with D.C. when D.C. would not give her cellphone to mother's husband. Instead, D.C. threw the phone out of the window. Outside, D.C. threw a bicycle at mother. Mother then picked up the bicycle and threw it back at D.C. On another occasion, on April 1, 2017, emergency responders were called to mother's home because one of D.C.'s friends had overdosed on cocaine. Mother and her husband stated that they were not home at the time, rather they had spent the night in a hotel. Then, just a few days before mother's testimony, mother filed a police report against D.C. because she believed D.C. had stolen several expensive things from the house, tried to burn the house down, and ran away. Mother testified that she did not believe that she would have

5.

the same issues with the other children because they were good kids, whereas D.C. thought she was a grown up and could not be reasoned with.

{¶ 8} Following mother's testimony on the third day of the hearing, the trial court ordered mother to provide a urine screen. The judge ordered the screen because mother appeared to be impaired while testifying. The results of the screen showed significant levels of noroxycodone, oxycodone, and oxymorphine. In response, mother provided two prescription lists from a pharmacy in Ypsilanti, Michigan. The lists showed that mother had prescriptions for oxycodone in 2015, and for oxycodone and gabapentin in 2017. The 2017 prescription list showed that mother had an address in Michigan, although mother testified that she was living in Toledo. Further, the list showed that the prescription was written and filled on May 8, 2017, which was one of the hearing days in this matter. Mother explained that her doctor writes the prescription and faxes it to the pharmacy, and that the pharmacy will deliver the prescription. Mother stated that the pharmacy does not require ID when it delivers the prescriptions. In rebuttal, Nicholson testified that she had never received any prescriptions from mother.

{¶ 9} The guardian ad litem testified last. She testified that it was her recommendation that LCCS be awarded permanent custody of the children. The guardian ad litem explained that throughout her involvement, mother has been very difficult to deal with, and has made it clear that she does not want to be involved with anything having to do with LCCS. The guardian ad litem acknowledged that O.T. and J.H. wished to be returned to mother, but stated her belief that mother was unable to

6.

provide the necessary care for the children. The guardian ad litem specifically referenced mother's difficulty with D.C., and noted that O.T. was beginning to exhibit some similar behaviors. The guardian ad litem testified that as the dispositional hearing has progressed over the past one and one-half months, the children's behavioral issues have been increasing. Finally, the guardian ad litem testified that there were not any prospective foster homes on the horizon for the children, but she believed that those opportunities would arise as they got into a stable placement.

{¶ 10} Following the hearing, the trial court found by clear and convincing evidence that the children cannot and should not be placed with mother within a reasonable period of time, and that an award of permanent custody to LCCS is in the children's best interest. Relative to mother, the trial court specifically found pursuant to R.C. 2151.414(E)(1) that notwithstanding reasonable efforts by the agency, mother has failed continuously and repeatedly to substantially remedy the condition that caused the children to be removed, and pursuant to R.C. 2151.414(E)(2) that mother has a chronic chemical dependency that is so severe that it makes her unable to provide an adequate permanent home for the children.

## II. Assignments of Error

{¶ 11} Mother has timely appealed the trial court's judgment terminating her parental rights, and now asserts two assignments of error for our review:

> I. The state did not prove by clear and convincing evidence that exigent circumstances existed in this matter, such that an original

7.

permanent custody action was necessary pursuant to R.C. 2151.419(A)(1), thereby relieving the agency of providing case plan services to appellant.

II. The award of custody to the agency was against the manifest weight of the evidence.

### III. Analysis

{¶ 12} Because appellant's first and second assignments of error are interrelated, we will address them together.

### A. Reasonable Efforts

{¶ 13} In her first assignment of error, mother argues that the trial court erred in awarding permanent custody of the children to LCCS, without requiring LCCS to make reasonable efforts to reunify the family.

{¶ 14} In support, mother argues that LCCS should have provided case plan services to her. Here, however, LCCS applied for original permanent custody pursuant to R.C. 2151.353(A)(4). "[W]here a children services agency seeks original permanent custody of children, pursuant to R.C. 2151.353(A)(4), the agency is not required to prepare a case plan." *In re S.S.*, 6th Dist. Lucas Nos. L-16-1234, L-16-1243, 2017-Ohio-4474, ¶ 80.

{¶ 15} Notwithstanding that, R.C. 2151.419(A)(1) provides,

Except as provided in division (A)(2) of this section, at any hearing held pursuant to section * * * 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a

8.

child from the child's home, the court shall determine whether the public
children services agency or private child placing agency that filed the
complaint in the case, removed the child from home, has custody of the
child, or will be given custody of the child has made reasonable efforts to
prevent the removal of the child from the child's home, to eliminate the
continued removal of the child from the child's home, or to make it
possible for the child to return safely home. The agency shall have the
burden of proving that it has made those reasonable efforts. If the agency
removed the child from home during an emergency in which the child
could not safely remain at home and the agency did not have prior contact
with the child, the court is not prohibited, solely because the agency did not
make reasonable efforts during the emergency to prevent the removal of the
child, from determining that the agency made those reasonable efforts. In
determining whether reasonable efforts were made, the child's health and
safety shall be paramount.

Further, R.C. 2151.353(I) provides, "The court shall not issue a dispositional order
pursuant to division (A) of this section that removes a child from the child's home unless
the court complies with section 2151.419 of the Revised Code and includes in the
dispositional order the findings of fact required by that section."

{¶ 16} In this case, the trial court complied with R.C. 2151.419(A)(1) and found
that LCCS made reasonable efforts to alleviate the need for continued placement outside

9.

of the children's home by "referring the parents for substance abuse treatment, individual counseling, family counseling, visitation, and case management." Thus, although LCCS did not provide case plan services in this case, the trial court found that LCCS nonetheless made reasonable efforts to reunify the family by providing services in the companion case involving D.C.

## B. Manifest Weight

{¶ 17} Alternatively, mother impliedly argues that the trial court's findings regarding reasonable efforts are against the manifest weight of the evidence. Likewise, in her second assignment of error, mother argues that the trial court's findings that the children cannot be placed with her within a reasonable time or should not be placed with her and that an award of permanent custody to LCCS is in the children's best interest are against the manifest weight of the evidence.

{¶ 18} R.C. 2151.353(A)(4) states that if a child is adjudicated an abused, neglected, or dependent child, the court may:

(4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D)(1) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child.

10.

**{¶ 19}** R.C. 2151.414(E) requires that the trial court's findings under that section be by clear and convincing evidence. Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. The clear and convincing standard requires more than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt. *Id.*

**{¶ 20}** "A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence." *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re Andy-Jones*, 10th Dist. Franklin Nos. 03AP-1167, 03AP-1231, 2004-Ohio-3312, ¶ 28. We recognize that, as the trier of fact, the trial court is in the best position to weigh the evidence and evaluate the testimony. *Id.*, citing *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Thus, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

**{¶ 21}** Here, mother contests three of the trial court's findings: 1) that LCCS made reasonable efforts to reunify the family, 2) that the children cannot be returned in a reasonable time and should not be returned pursuant to R.C. 2151.414(E)(1) and (2), and

11.

3) that permanent custody to LCCS is in the children's best interest under R.C. 2151.414(D)(1). We will address each one in turn.

### 1. Reasonable Efforts

{¶ 22} Mother contends that LCCS failed to make reasonable efforts to reunify the family because it did not offer case plan services in this case. While it is true that LCCS did not offer case plan services in this case, the testimony from the hearing reveals that mother's substance abuse and parenting skills were concerns in both the current case and the companion case involving D.C. In D.C.'s case, mother was offered family counseling services, but was unsuccessfully discharged because she missed two of four meetings. Mother was also requested to take an assessment for substance use at Unison, but failed to keep the appointment on three different occasions. Furthermore, the caseworker and guardian ad litem testified that mother was difficult to work with and did not want to be involved with LCCS, which hindered their ability to provide services. Thus, we hold that the trial court's finding that LCCS made reasonable efforts is not against the manifest weight of the evidence.

### 2. R.C. 2151.414(E)(1) and (2)

{¶ 23} Mother next argues that she has remedied the problems that initially caused the children to be removed, and that she does not have a substance abuse issue. Relevant here, R.C. 2151.414(E)(1) and (2) provide,

If the court determines, by clear and convincing evidence, at a

hearing held pursuant to division (A) of this section or for the purposes of

12.

division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exists as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or

for the purposes of division (A)(4) of section 2151.353 of the Revised Code.

{¶ 24} In particular, mother argues that the evidence does not show that she has failed continuously and repeatedly to remedy her substance abuse issue. Mother asserts that her OVI occurred in March 2015, which was before she completed substance abuse services in December 2015. Mother contends that she successfully completed her probation for the OVI, has successfully completed substance abuse services, and has not reoffended. Further, mother argues that she has a prescription for her opiate use, which explains her subsequent positive tests for oxycodone.

{¶ 25} However, the record demonstrates that after mother completed the substance abuse services in December 2015, she tested positive for opiates in March 2016. Mother has not provided a prescription that covers March 2016. In addition, the testimony reveals that mother appeared to be under the influence at a visitation in February 2017, and while she was testifying at the hearing in May 2017. The test results taken after the May 30, 2017 hearing confirmed that mother had very high levels of oxycodone, noroxycodone, and oxymorphine. We also agree with the trial court that mother's 2017 prescription list is "suspicious" given that her address is listed in Michigan even though she lives in Toledo, the prescription is filled in Ypsilanti, Michigan, and that the pharmacy would deliver the prescriptions for opiates an hour away and not require identification upon delivery. Therefore, we hold that the trial court's findings under R.C. 2151.414(E)(1) and (2) are not against the manifest weight of the evidence.

14.

### 3. Best Interests

**{¶ 26}** Finally, mother argues that an award of permanent custody to LCCS is not in the children's best interests.

**{¶ 27}** R.C. 2151.414(D)(1) states,

(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶ 28}** Here, mother contends that her visits with the children were appropriate and that she was calm, controlled, and focused on them. Also, mother notes that there are no adoptive homes lined up for the children, and it is uncontroverted that she is bonded to her children and that the older children desire to be returned to her.

**{¶ 29}** While there are no adoptive homes lined up for the children, the guardian ad litem testified that once the children were stabilized, she saw the possibility for adoption. Moreover, the guardian ad litem testified that the longer the proceedings went on, the more difficulty the children were having, and she felt that mother was unable to provide a suitable home for them. Thus, we hold that the trial court's finding that permanent custody to LCCS is in the children's best interest is not against the manifest weight of the evidence.

**{¶ 30}** Accordingly, mother's first and second assignments of error are not well-taken.

## IV. Conclusion

**{¶ 31}** For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Mother is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Thomas J. Osowik, J.

James D. Jensen, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE