[Cite as *In re C.P.*, 2018-Ohio-2758.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re C.P., K.P., N.P.

Court of Appeals No. L-18-1020

Trial Court No. JC 16258992

**DECISION AND JUDGMENT**

Decided: July 13, 2018

* * * * *

Laurel A. Kendall, for appellant.

Carmille L. Akande, for appellee.

* * * * *

**JENSEN, J.**

## I.     Introduction

{¶ 1} Appellant, M.W., appeals the judgment of the Lucas County Court of Common Pleas, Juvenile Division, granting a motion for permanent custody filed by appellee, Lucas County Children Services ("LCCS"), thereby terminating her parental

rights with respect to her three children, C.P., K.P., and N.P. (collectively referred to as "the children").[1]

## A. Facts and Procedural Background

{¶ 2} This matter stems from a referral LCCS received on October 5, 2016, in which it was alleged that appellant and the children were residing in a hotel where appellant was engaged in prostitution. Additionally, the referral alleged that appellant left the children alone and had not enrolled them in school.

{¶ 3} Three days later, LCCS received another referral alleging that N.P. was sexually assaulted at the hotel. Subsequently, appellant admitted to an LCCS caseworker that she had a history of prostitution and was being financially supported by a former prostitution client. She also acknowledged that the children had not been to school during the 2016-2017 school year.

{¶ 4} LCCS received a third referral relating to appellant and the children on October 26, 2016. In this referral, it was alleged that the children were left alone in their hotel room while appellant was "just in another hotel room with friends." Shortly after receiving the third referral, LCCS was informed by the children's paternal grandmother that appellant had placed the children with the grandmother and authorized the grandmother to care for them.

---

[1] The children's father, Ca.P., did not file a notice of appeal and is therefore not a party to this proceeding. He was in prison for felonious assault during the pendency of these proceedings and, according to LCCS's complaint, is expected to be released on December 7, 2018.

**{¶ 5}** As a result of the foregoing referrals, LCCS filed a complaint in dependency, neglect, and abuse, and motion for shelter care hearing on November 14, 2016. In its complaint, LCCS sought an emergency shelter care hearing, to be followed by an adjudication hearing at which LCCS would seek a determination that the children were dependent, neglected, and abused.

**{¶ 6}** A shelter care hearing was held, at which appellant agreed to an award of temporary custody to LCCS. Consequently, the court awarded interim temporary custody to appellant's relative, K.B., with supervised visitation for appellant. The court found that LCCS had made and continued to make reasonable efforts to prevent the removal of the children from the home. Additionally, the court ordered appellant to undergo a diagnostic assessment and drug screen.[2] The court then set the matter for an adjudication hearing on January 3, 2017.

**{¶ 7}** On December 6, 2016, LCCS filed appellant's original case plan with a goal of reunification. The case plan included a diagnostic assessment, as well as mental health services, substance abuse treatment, domestic violence counseling, and stable housing.

**{¶ 8}** On December 8, 2016, LCCS filed an amended complaint in dependency, neglect, and abuse, alleging concerns for the safety of the children while in the care of K.B. due to her husband's extensive criminal history and substance abuse. LCCS also

---

[2] Two days after LCCS filed its complaint, the court received the results of appellant's drug screen, which revealed that appellant had tested positive for oxycodone and opiates.

3.

alleged concerns that appellant was having unsupervised contact with the children in contravention of the court's prior order.

{¶ 9} The adjudication hearing in this matter was held on January 3, 2017. At the hearing, the children were found to be neglected, and N.P. was found to be abused. The court continued the matter for disposition and scheduled a hearing for February 6, 2017. At the disposition hearing, the court awarded temporary custody to LCCS. In its order, the court again found that LCCS had made reasonable efforts to prevent the removal of the children from the home. The court listed those efforts, which included substance abuse treatment, mental health treatment, domestic violence counseling, and housing services. Additionally, the court ordered appellant to submit to another drug screen.

{¶ 10} A subsequent shelter care hearing was held based upon LCCS's amended complaint. At the hearing, the court ordered that interim temporary custody of the children be transferred from K.B. to LCCS while awaiting further investigation in whether placement with another relative would be appropriate. In its order, the court once again found that LCCS had made reasonable efforts to prevent the removal of the children from the home.

{¶ 11} On May 15, 2017, the court held a review hearing. The court found that LCCS had continued to make reasonable efforts to prevent the removal of the children from the home. As to appellant's response to those efforts, the court found that appellant's substance abuse attendance had been sporadic. Further, the court determined

4.

that appellant had not yet begun domestic violence counseling. As to housing, the court noted that appellant was living with a friend.

{¶ 12} Three months later, LCCS filed its motion for permanent custody. In its motion, LCCS alleged that the children could not or should not be placed with either of their parents within a reasonable time and that permanent custody was in the children's best interest. LCCS also asserted that appellant failed to comply with her case plan services. Specifically, LCCS stated that appellant continued to abuse substances, having tested positive for oxycodone, benzodiazepine, opiates, buprenorphine, alprazolam, sertraline, clonazepam, fentanyl, cocaine, and gabapentin. LCCS also noted that appellant missed several of her drug screens, and had only completed 4 out of 16 individual sessions for mental health counseling. As to services for domestic violence, LCCS asserted that appellant had only completed three sessions since being referred four months prior.

{¶ 13} A two-day hearing on LCCS's motion for permanent custody began on December 12, 2017. At the hearing, LCCS called three witnesses. Appellant did not testify, nor did she call any witnesses on her behalf.

{¶ 14} As its first witness, LCCS called Martha Campbell, the clinical director for alcohol and drug services at A Renewed Mind. Campbell testified that LCCS referred appellant to A Renewed Mind in December 2016 for a biopsychosocial assessment. Following the assessment, Campbell diagnosed appellant with opiate use disorder and antisocial personality disorder. Based upon that diagnosis, Campbell recommended

5.

weekly sessions of individual dual diagnosis treatment that would provide services for appellant's mental health and substance abuse issues. According to Campbell, appellant was not consistent in attending the weekly sessions. Specifically, Campbell testified that appellant "never really came for the first individual session until February, and then she came to a couple and then there were three or four cancellations, a couple of no shows. I am not sure of the exact number, but it was very inconsistent attendance."

{¶ 15} Concerning appellant's substance abuse, Campbell noted that appellant had consistently tested positive for various opiates without producing a prescription for such substances. At one point, appellant provided a disc to Campbell that was purported to contain her medical records. However, the disc had a hole in it and no data could be retrieved. When approached about the condition of the disc, appellant insisted that the disc did not have a hole in it when she provided it to Campbell. Campbell made multiple phone calls to appellant's doctor to obtain medical records that would support appellant's claim that her opiate use was prescribed. Her calls were never answered. No further effort was made by appellant to produce evidence of a prescription for opiates. Additionally, appellant informed Campbell that she had taken suboxone that she received from a friend because she could not sleep. Appellant explained her positive test for cocaine by suggesting that the test result may have been due to the fact that she was around other people who were using cocaine.

{¶ 16} As a result of appellant's positive drug screens, intensive outpatient services were offered to appellant in May 2017. The intensive outpatient program

6.

included three sessions per week. Campbell stated that appellant did not participate until August 2017, when she attended orientation and one additional session.

{¶ 17} Ultimately, Campbell testified that appellant stopped participating with A Renewed Mind. As a result of appellant's noncompliance with her case plan services, appellant was unsuccessfully discharged from A Renewed Mind in October 2017.

{¶ 18} As its second witness, LCCS called the caseworker assigned to this case, Danielle Stroble. Stroble testified that appellant and the children have a history with LCCS dating back to a report of abuse and neglect that LCCS received in 2010. In 2013, LCCS received another report of neglect. In 2014, LCCS received two referrals, one for neglect and another for sexual abuse, which was unsubstantiated. One additional referral was made in 2015 for neglect. Finally, Stroble testified that LCCS received three referrals in 2016 related to sexual abuse that took place prior to the referral that initiated these proceedings in October 2016.

{¶ 19} According to Stroble, LCCS developed a case plan with the goal of reunification after becoming involved in this matter. The services offered in the case plan included mental health services, substance abuse treatment, and a domestic violence victim's program. Additionally, appellant was expected to obtain stable housing.

{¶ 20} As to the domestic violence services, Stroble indicated that appellant was referred to Family Services of Northwest Ohio, Project Genesis, on April 24, 2017. Stroble testified that appellant did not begin participation in domestic violence services until June 20, 2017, after failing to appear for two prior appointments that had been

7.

scheduled. After completing intake, appellant attended three educational sessions in July 2017. Stroble indicated that the Project Genesis program lasts between eight and twelve weeks. Appellant attended the three educational sessions and did not return for any additional sessions. As a result, Stroble testified that appellant failed to complete her domestic violence services.

{¶ 21} With regard to appellant's substance abuse issues, LCCS asked Stroble whether appellant had ever produced a prescription authorizing her use of opiates, to which Stroble responded in the negative. As was the case with Campbell, Stroble had a "very hard time getting in contact" with appellant's doctor.

{¶ 22} On cross-examination, Stroble stated that appellant had secured housing through the financial support of her "on-and-off-again boyfriend," although Stroble indicated that LCCS was concerned about domestic violence issues between appellant and her boyfriend. Further, Stroble testified that appellant's visits with the children were going well and the children seemed to be bonded to appellant.

{¶ 23} As its third and final witness, LCCS called the children's guardian ad litem, Sharon Fitzgerald, who recommended that the court grant LCCS's motion for permanent custody. In support of her recommendation, Fitzgerald cited the instability in the children's lives regarding their housing, education, and medical issues. Fitzgerald also expressed concerns with appellant's history of substance abuse and her denial of any substance abuse problems. In sum, Fitzgerald opined that reunification of the children and appellant would not be an option. Specifically, Fitzgerald testified: "I don't see any

8.

progress at all in this case. Everything is – I mean, currently I don't know that she's actively engaged in any service, and any of the services that she would have to engage in would take a considerable period of time at this point."

{¶ 24} On January 2, 2018, the court issued its decision on LCCS's motion for permanent custody. In its decision, the court found that the children had been in the temporary custody of LCCS for 12 or more of months of a consecutive 22-month period. Further, under R.C. 2151.414(E)(1), the court found that appellant failed to substantially remedy the conditions causing the children to be removed from the home despite reasonable case planning and diligent efforts by LCCS to assist her to remedy such conditions.

{¶ 25} In support of its finding under R.C. 2151.414(E)(1), the court indicated that appellant obtained stable housing, but otherwise failed to complete the remaining case plan services. In particular, the court noted that appellant failed to complete domestic violence services and was unsuccessfully discharged from substance abuse and mental health programs. On the subject of appellant's substance abuse and mental health issues, the court found that such issues were so severe that they made her unable to provide an adequate permanent home within one year under R.C. 2151.414(E)(2). The court went on to note that appellant had tested positive for a number of drugs on several occasions, and failed to present any prescriptions that would justify her usage of such drugs.

{¶ 26} Ultimately, the court found that the children could not be placed with either parent within a reasonable time and should not be placed with either parent, and that an

9.

award of permanent custody to LCCS was in the children's best interest. Consequently, the court granted LCCS's motion for permanent custody, thereby terminating appellant's parental rights in the children. Appellant's timely appeal followed.

**Assignments of Error**

{¶ 27} On appeal, appellant presents the following assignments of error for our review:

I. The trial court erred in finding that appellee Lucas County Children Services Board had made a reasonable effort to reunify the minor child with appellant M.W.

I. The trial court erred to appellant's prejudice * * * by allowing testimony about medical issues for which no foundation was laid (one instance) and which was arguably beyond the scope of the [witness's] qualifications (one instance). This testimony violated the rules of evidence and prejudiced appellant's right to a fair trial as guaranteed by the state and federal constitutions.

III. The trial [court's grant of] appellee Lucas County Children Services Board's motion for permanent custody was against the manifest weight of the evidence.

{¶ 28} For ease of discussion, we will address appellant's assignments of error out of order, beginning with the second assignment of error. Appellant's first and third assignments of error are interrelated and will be addressed simultaneously.

## II. Analysis

### A. Evidentiary Issue

{¶ 29} In her second assignment of error, appellant argues that the trial court erred in allowing testimony about medical issues for which no foundation was laid and which was arguably beyond the scope of the witness's qualifications.

{¶ 30} Generally, "[t]he trial court has broad discretion in the admission of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of the trial court." *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001). An abuse of discretion connotes that a court's attitude in reaching its decision was arbitrary, unreasonable or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 31} Here, appellant takes issue with the following evidence that was allowed over her objection at the hearing on LCCS's motion for permanent custody during Campbell's redirect examination:

Q: When you work with patients, are you knowledgeable about what prescriptions they receive from different doctors, is that a part of your assessment?

A: Yeah, we ask what meds they've been on in the past and currently.

Q: And why is that important to you?

11.

A: Well, if it's – it speaks to what kind of symptoms they have, what their diagnosis might be.  We – if we're going to refer them to a psychiatrist, we need to know what has worked in the past, what hasn't worked.

Q: Why did you diagnose [appellant] with opiate use disorder?

A: Because she was reporting taking a lot of opiates daily, prescribed.  She said they were prescribed.

Q: From December of 2016 until September of 2017, did she ever produce for you any prescriptions for Percocet or anything else?

A: No.

Q: And did any doctor send any letters to you indicating the prescriptions that she was prescribed?

A: No.

[Appellant's counsel]:  I am going to ask to have that stricken because there was no indication that there was any request of any doctor being made.

The Court:  Overruled.

{¶ 32} Prior to this testimony, Campbell had testified that she made several phone calls to the doctor that allegedly prescribed appellant's medications, to no avail. Following this colloquy, LCCS went on to question Campbell as to the details of her phone calls, whether she left any voicemails, and whether her calls were ever returned.

12.

**{¶ 33}** On appeal, appellant argues that the trial court should have excluded Campbell's testimony indicating that appellant's doctor did not send her any letters detailing appellant's prescriptions. She insists that such testimony was admitted without a proper foundation and was unfairly prejudicial under Evid.R. 403 in that it inaccurately inferred that appellant had the burden of proof as to the existence of prescriptions. We find no merit to this argument.

**{¶ 34}** Initially, we note that Campbell testified during direct examination that her diagnosis of opiate use disorder was not dependent upon whether appellant had, in fact, been prescribed the drugs that were found in her system. On that point, Campbell stated that the drugs discovered in appellant's system were addictive regardless of whether they were prescribed or not.

**{¶ 35}** As to foundation, Campbell testified on direct examination as to her efforts to secure evidence of appellant's prescriptions from her doctor. These efforts included several phone calls to the doctor, some of which resulted in voicemails inviting a return phone call for the purpose of ascertaining whether appellant was prescribed the drugs that were found in her system as a result of her drug screens. Having explored Campbell's attempts to communicate with the doctor, it logically follows that LCCS would question Campbell as to whether any return correspondence from the doctor was forthcoming. In light of Campbell's testimony on direct examination, we find a proper foundation to support the challenged evidence.

13.

{¶ 36} Concerning unfair prejudice, Evid.R. 403(A) states that relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Upon due consideration, we find that the challenged evidence is clearly relevant to the question of whether appellant was actually prescribed the prescription opiates that she was ingesting. We do not find that merely asking whether Campbell received written correspondence from appellant's doctor amounted to an attempt to prejudicially and improperly shift the burden of proof from LCCS to appellant. LCCS was simply eliciting testimony to explain Campbell's attempts to substantiate appellant's claim that she was only taking drugs for which she had a prescription. The probative value of this evidence was not substantially outweighed by any unfair prejudice to appellant. Consequently, we find that the trial court did not abuse its discretion in overruling appellant's objection.

{¶ 37} Next, appellant argues that the trial court abused its discretion in overruling her objection to the following testimony:

Q: Okay. Being that you've been in this field since 1997, does it concern you when patients test positive for these different types of drugs?

A: Yes.

Q: Why does it concern you?

A: Because it's a mixture of things that shouldn't be all together probably. Different –

[Appellant's counsel]: Once again I am going to object. I don't believe this individual witness is qualified to answer that question.

The Court: Overruled.

{¶ 38} As to this testimony, appellant asserts that the trial court abused its discretion because Campbell was not qualified as an expert prior to opining as to the fact that the cocktail of drugs found in appellant's system "shouldn't be all together." Having examined the testimony in its context, we find that Campbell's statement did not constitute a medical opinion requiring an expert witness. In her statement, Campbell was merely revealing why she was personally concerned about appellant's drug screens. Campbell's concern in this regard was telling because it was informed by decades of experience and her position as the clinical director for alcohol and drug services at A Renewed Mind. Campbell did not opine that the drug cocktail contained in appellant's system was dangerous to any degree of medical certainty, but simply stated that she personally believed that the mixture of drugs "probably" should not have been taken together. Campbell was not testifying as an expert, and therefore did not need to be qualified as such.

{¶ 39} Having found no merit to appellant's evidentiary arguments, we find appellant's second assignment of error not well-taken.

**B. Reasonable Efforts and Manifest Weight**

{¶ 40} In her first assignment of error, appellant argues that the trial court erred in finding that LCCS made reasonable efforts to reunify her with the children. In her third

15.

assignment of error, appellant argues that the trial court's grant of LCCS's motion for permanent custody was against the manifest weight of the evidence.

{¶ 41} "A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence." *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re Andy-Jones*, 10th Dist. Franklin Nos. 03AP-1167, 03AP-1231, 2004-Ohio-3312, ¶ 28. In conducting a review on manifest weight, the reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. We recognize that, as the trier of fact, the trial court is in the best position to weigh the evidence and evaluate the testimony. *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Thus, "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, fn. 3, 461 N.E.2d 1273 (1984).

{¶ 42} Here, the trial court concluded that permanent custody to LCCS was warranted based on its finding under R.C. 2151.414(E)(1) that appellant failed to substantially remedy the conditions causing the children to be removed from the home

16.

despite reasonable case planning and diligent efforts by LCCS to assist her to remedy such conditions. Appellant challenges the trial court's reasonable efforts determination under R.C. 2151.414(E), specifically taking issue with LCCS's attempts at ascertaining whether she was prescribed the medication for which she tested positive throughout the pendency of this case.

{¶ 43} R.C. 2151.414(E) provides, in relevant part:

If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to

17.

the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶ 44} The issue in a reasonable-efforts determination is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard in R.C. 2151.414(E)(1). *In re A.B.*, 6th Dist. Lucas Nos. L-12-1069 and L-12-1081, 2012-Ohio-4632, ¶ 25. "A 'reasonable effort' is an 'honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage.'" *Id.*, quoting *In re Weaver*, 79 Ohio App.3d 59, 63, 606 N.E.2d 1011 (12th Dist.1992).

{¶ 45} Regarding LCCS's efforts at reunification, Stroble testified that LCCS has been involved with appellant since 2010. In this case, appellant was afforded a variety of case plan services including mental health services, substance abuse treatment, and a domestic violence victim's program. Additionally, appellant was expected to obtain stable housing. While appellant appeared to have secured stable housing, the court found that appellant failed to make progress on her remaining case plan services. Having examined the record, we agree.

{¶ 46} According to Campbell's testimony, appellant was expected to participate in weekly sessions to address her mental health and substance abuse issues. Campbell stated that appellant was "very inconsistent" in her attendance, and consistently tested positive for various opiates without producing a prescription for such substances. Both Campbell and Stroble testified as to their pursuit of documentation that would substantiate appellant's claim that she was prescribed the medications that were found in

18.

her system. These efforts included securing a medical release from appellant and making multiple phone calls to appellant's doctor, which went unreturned. Notably, appellant acknowledged that she did not have a prescription for the suboxone and cocaine that were found in her system. An intensive outpatient program was offered to appellant, but appellant only attended orientation and one additional session. Having failed to take advantage of the mental health and substance abuse services afforded to her, appellant was unsuccessfully discharged from A Renewed Mind in October 2017. Stroble testified that appellant failed to complete her domestic violence services, having only attended three educational sessions in a program that is designed to take between eight and twelve weeks to complete.

{¶ 47} In light of the case plan services offered to appellant in this case, most of which appellant failed to utilize, we find that the trial court's finding that LCCS made reasonable efforts to reunify appellant and the children was not against the manifest weight of the evidence. *See In re O.T.*, 6th Dist. Lucas No. L-17-1195, 2018-Ohio-1615, ¶ 22 (holding that reasonable efforts were made by LCCS where mother was offered services in a companion case that included family counseling and substance abuse services, but mother failed to participate in such services). Moreover, we find no merit to appellant's contention that LCCS did not make reasonable efforts to determine whether appellant had, in fact, been issued prescriptions for the drugs that were found in her system given the lengths to which Campbell and Stroble went in order make such determination.

19.

**{¶ 48}** Accordingly, appellant's first and third assignments of error are not well-taken.

### III. Conclusion

**{¶ 49}** For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                  _____
                                          JUDGE

James D. Jensen, J.

                                         _____
Christine E. Mayle, P.J.                             JUDGE
CONCUR.

                                         _____
                                          JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.