[Cite as *In re: L.S.*, 2018-Ohio-2978.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re L.S.                                    Court of Appeals No. L-18-1006

                                              Trial Court No. JC 17263141

                                              <u>**DECISION AND JUDGMENT**</u>

                                              Decided: July 27, 2018

* * * * *

Adam H. Houser, for appellant.

Carmille L. Akande, for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a November 9, 2017 judgment of the Lucas County

Court of Common Pleas, Juvenile Division, which found L.S., the subject minor child, to

be dependent, abused, and neglected. For the reasons set forth below, we affirm the

judgment of the trial court.

{¶ 2} This case stems from the parental sexual abuse of a minor child, L.S., by the child's father, appellant. On June 5, 2017, appellee, Lucas County Children Services ("LCCS") filed a complaint in dependency, abuse, and neglect concerning L.S. On the same day, the Lucas County Court of Common Pleas, Juvenile Division awarded interim temporary custody of L.S. to LCCS.

{¶ 3} On November 9, 2017, the trial court determined that L.S. was dependent, abused, and neglected, and awarded continued temporary custody to LCCS. The court also issued a no contact order between L.S. and appellant, denied visitation given the circumstances, and noted the unlikelihood of reunification.

{¶ 4} On December 1, 2017, the trial court filed additional findings of fact that the agency had made reasonable efforts to prevent removal of the child and to make safe return to the home possible.

{¶ 5} Appellant, L.H., sets forth the following two assignments of error:

I. The trial court abused its discretion when it denied father to have any visitation with the child.

II. The court committed plain error when it stated that father's reunification is not an option as this was an adjudication disposition hearing and not a hearing for permanent custody or termination of parental rights.

{¶ 6} The following facts are relevant to this appeal. L.S. was born in October 2001; appellant is her biological father. The biological mother of L.S. is deceased. A third-party, who is not a party to this case, previously assumed custody of L.S. but

2.

subsequently renounced her willingness to care for the child.  The record reflects that L.S. resided at appellant's home intermittently over the years preceding this case.

{¶ 7} The record encompasses extensive evidence of appellant's infliction of numerous instances of sexual abuse against L.S.  LCCS provided four witnesses who collaborated L.S.'s disclosure of the sexual abuse.  These witnesses furnished detailed and consistent testimony of the sexual abuse suffered by L.S. and perpetrated by appellant.

{¶ 8} The Child Abuse Program Coordinator at Mercy St. Vincent's Hospital interviewed L.S. about the sexual abuse allegations in June 2017.  L.S. relayed to her that she had been raped by her father on countless occasions.

{¶ 9} She revealed that this first occurred when she was 14 years old.  L.S. conveyed that she was lying on the couch when appellant approached her, "And, next thing I know we were having sex."  Appellant then ordered his daughter to, "Take it like a woman."  L.S. stated that this sexual abuse was ongoing, saying that appellant raped her "quite a lot."

{¶ 10} L.S. also met with Dr. Schlievert, the Director of the Child Abuse Program at Mercy St. Vincent's.  During his investigation, L.S. disclosed to Schlievert having been forced to partake in, "oral sex, digital penetration, and vaginal intercourse with appellant."

{¶ 11} Schlievert's testimony reflected that the sexual abuse by appellant happened "at least 200 times."  L.S. disclosed that appellant would make her "suck his

3.

thing," and appellant "would moan while having sex [with L.S.] and failed to use protection." L.S. also conveyed that appellant treated her like his girlfriend, and that she was scared of appellant due to his involvement in drugs, guns, and shootings.

{¶ 12} Schlievert concluded at the end of his investigation that there were legitimate and serious concerns with L.S. being in close physical proximity to appellant. Accordingly, Schlievert noted that "I would want immediate protection, including lifelong separation [between L.S. and appellant]."

{¶ 13} Detective Talton from the Toledo Police Department's Special Victim's Unit also testified regarding the sexual abuse by appellant. Talton viewed a video of appellant stating that "he was going to urinate in front of L.S." Appellant had also said that "he was going to make L.S. his 'baby momma.'"

{¶ 14} L.S. also disclosed to Talton details of various instances when she had been raped by appellant. L.S. specifically reported that appellant "took his thing out of his pants and put it inside of her." Talton consistently testified that L.S. was told to "take it like a woman," when appellant "pulled out and ejaculated onto her."

{¶ 15} An LCCS caseworker involved with L.S.'s case testified that appellant drank in excess frequently and was abusive to L.S. Appellant would often call L.S. "a bitch and a whore," and admitted to "hitting her in the head." She recalled that L.S. had reported to her that appellant would "touch her [inappropriately]" frequently, and that appellant forced her to have sex approximately 200 times. She was also made aware by the child's school that appellant would contact L.S. during the school day and became

4.

enraged if she failed to respond. It was noted that the relationship between appellant and L.S. appeared to reflect that of a romantic relationship rather than that of a father and daughter.

{¶ 16} The record further reflects the emotional distress that L.S. suffered because of appellant's sexual abuse. L.S. was admitted to the hospital three times. It was noted that appellant's actions have worsened the effects of various mental health conditions from which L.S. suffers, such as depression, anxiety, conduct disorder, PTSD, and ADD. The ongoing sexual abuse by appellant has prompted her to ideate suicide and self-harm. As a result, L.S. now resides at a mental health treatment facility.

{¶ 17} Notably, during the hearing for the present matter, appellant was incarcerated for the criminal charges relating to the sexual abuse detailed above. The charges were subsequently dropped due to L.S.'s unwillingness to testify against her father. Regardless, there is ample evidence that appellant systematically engaged in sexual intercourse with the victim.

{¶ 18} Accordingly, the trial court found there to be clear and convincing evidence that L.S. was dependent, abused, and neglected. In the child's best interest, temporary custody was then awarded to LCCS. The court imposed a no-contact order between L.S. and appellant, in addition to all paternal relatives. The court also concluded that reunification was not a reasonable goal. This appeal ensued.

{¶ 19} As a preliminary matter, pursuant to Juv.R. 40(D)(3)(b), appellee maintains that appellant did not properly preserve this appeal. Appellee argues that the failure to

5.

file an objection within 14 days from the magistrate's November decision should result in a plain error standard of review.

{¶ 20} Appellee is correct based on the statute's plain language. However, in order to resolve this matter on the merits, we will review appellant's submitted assignments of error.

{¶ 21} In the first assignment of error, appellant asserts that the trial court committed an abuse of discretion by denying appellant visitation. We do not concur.

{¶ 22} The Ohio Supreme Court has determined that "the term abuse of discretion connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St. 217, 219, 450 N.E.2d 1140 (1983). In order to find an abuse of discretion, the appellate court must find that there is no sound reasoning process that would support the trial court's decision. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E. 2d 597 (1990).

{¶ 23} R.C. 2151.414(E) requires that the trial court find by clear and convincing evidence that a child is dependent, abused, or neglected. Clear and convincing evidence is that which is sufficient to produce a firm belief by the trier of fact as to the allegations sought to be established. *In re O.T.*, 6th Dist. Lucas No. L-17-1195, 2018-Ohio-1615, citing *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954).

{¶ 24} Additionally, R.C. 3109.051(D)(1) establishes that in determining whether to grant parenting time "the court shall consider: (1) The prior interaction and

6.

interrelationships of the child with the child's parents * * *." Therefore, courts are obliged to consider the fact-specific parent-child relationship in determining whether visitation is appropriate.

{¶ 25} Here, four witnesses provided consistent, corroborating testimony that presented an extensive history of appellant's ongoing sexual abuse of L.S. The court correctly found this to constitute clear and convincing evidence that L.S. is dependent, abused, and neglected. Pursuant to R.C. 3109.051(D)(1), the trial court was required to consider this evidence in making its determination on the suitability of visitation for appellant.

{¶ 26} We find that the court properly found, in L.S.'s best interest, visitation should not be granted to appellant. Wherefore, we find appellant's first assignment of error not well-taken.

{¶ 27} In the second assignment of error, appellant asserts that the trial court committed plain error in noting the unlikelihood of reunification. We do not concur.

{¶ 28} Appellate courts find plain error "only in the extremely rare case involving exceptional circumstances where [the] error * * * seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *In re E.P.*, 6th Dist. Wood No. WD-09-070, 2010-Ohio-3529, ¶ 57, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus.

**{¶ 29}** R.C. 2151.353(2)(a) permits a child found to be dependent, abused, or neglected to be committed into custody of a public children services agency.

**{¶ 30}** Here, substantial evidence of parental sexual abuse was presented from multiple, credible witnesses. As such, the judgment finding L.S. was sexually abused by appellant was clearly supported by ample evidence. Accordingly, setting forth a goal of reunification under these circumstances would be improper and contrary to the best interests of the child. Wherefore, we find appellant's second assignment of error not well-taken.

**{¶ 31}** Based upon the foregoing, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

| | |
|---|---|
| Thomas J. Osowik, J. | _____ |
| | JUDGE |
| James D. Jensen, J. | |
| | _____ |
| Christine E. Mayle, P.J. | JUDGE |
| CONCUR. | |
| | _____ |
| | JUDGE |

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

8.